# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **RENA PERRY FOR E.D.**, )<br>Plaintiff )<br>)<br>v. )<br>)<br>**JO ANNE B. BARNHART**, )<br>**Commissioner of Social Security**, )<br>Defendant )<br>) | Civil Action No. 2:05cv00021<br>**REPORT AND**<br>**RECOMMENDATION**<br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Rena Perry, ("Perry"), on behalf of her son, E.D., filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying E.D.'s claim for children's supplemental security income, ("SSI"), benefits under Title XVI of the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 1381-1383d. (West 2003 & Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Perry protectively filed an application for children's SSI on behalf of her son on October 15, 2003, alleging disability as of September 20, 2001, based on attention deficit hyperactivity disorder, oppositional aggressive disorder, developmental delays, speech delay, being underweight and having a small hole in his heart. (Record, ("R."), at 42-44, 49, 63, 73, 76.) Perry's claim was denied initially and on reconsideration. (R. at 32-35, 36, 37-40.) Perry then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The hearing was held on October 6, 2004, at which she was represented by counsel. (R. at 342-52.)

By decision dated November 2, 2004, the ALJ denied Perry's claim. (R. at 16-22.) The ALJ found that E.D. had never performed any substantial gainful activity. (R. at 21.) The ALJ found that the medical evidence established that E.D. suffered from severe impairments, namely an attention deficit hyperactivity disorder, a learning disability in reading and borderline to low average intellect, but he found that E.D. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) The ALJ also found that the combination of medically determinable physical or mental impairments did not result in marked and severe functional limitations. (R. at 21.) Therefore, the ALJ concluded that E.D. was not under a disability as defined by the Act and was not

eligible for children's SSI benefits. (R. at 21-22.) *See* 20 C.F.R. § 416.924(d)(2) (2005); *see also* 42 U.S.C.A. § 1382c(a)(3)(C) (West 2003 & Supp. 2005).

After the ALJ issued his decision, Perry pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 5-8.) Perry then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on Perry's motion for summary judgment filed September 30, 2005, and the Commissioner's motion for summary judgment filed November 2, 2005.

## *II. Facts*

During the relevant period of review, E.D. attended Headstart for two years (ages four and five), kindergarten in 2002-2003 (age six), first grade in 2003-2004 (age seven) and repeated first grade in the 2004-2005 school year.

It is Perry's position that the ALJ failed to consider whether E.D. had oppositional defiant disorder, and that the alleged impairment is severe. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Thus, this statement of facts will specifically address evidence regarding E.D.'s behavior.

It is noted that, in rendering his decision, the ALJ reviewed records from Hawkins County Schools; Scott County Schools; Victor O'Bryan, Ph.D., a state

agency psychologist; Dr. Williams, M.D., a state agency physician;[1] Dr. Ashok V. Mehta, M.D., a cardiologist; Dr. Otto H. P. Teixeira, M.D., a cardiologist; Dr. W. Jan Kazmier, M.D., Ph.D.; Holston Child and Youth Services; Scott County Mental Health Center; and 1st Step Rehab. Perry's attorney submitted additional medical records from Dr. Manatu to the Appeals Council.[2]

The first concern in the record regarding oppositional behavior was in May 2002, when E.D. was in preschool.[3] (R. at 219.) E.D. underwent testing at school under an individualized education program, ("IEP"), because his mother was concerned with his developmental delays. (R. at 219.) E.D. underwent the Connors Rating Scale and his scores indicated concern for oppositional defiant behavior. (R. at 219.) It was reported that E.D. usually got along well with others, but could be non-compliant at times. (R. at 219.) It was reported that E.D. was usually "set off" when he did not get his way or if he became overwhelmed. (R. at 219.) Thus, E.D. was under a behavior intervention plan. (R. at 219.)

In 2001, E.D.'s speech therapy treatment notes describe E.D. as tolerating his treatment well, being cooperative, demonstrating active listening and meeting his

---

[1] Dr. Williams's complete name is illegible. (R. at 131.)

[2] Dr. Manatu's full name is not contained in the record. Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

[3] The record fails to specifically describe any examples of E.D.'s behavior before May 2002.

-4-

goals.[4] (R. at 279-85, 306-13.) In 2002, the treatment notes fail to describe any oppositional behavior. (R. at 203-16, 255-76, 286-305.) A September 2002, IEP report for the first grade year, (2003-2004), indicated that E.D. was eligible as a student who was developmentally delayed. (R. at 116.) E.D. would receive resource in reading and consultation in math. (R. at 116.) Modifications per the IEP would be abbreviated assignments, additional time, read aloud directions on test items, oral testing and modified grading. (R. at 116.) It was indicated that E.D. was "doing fine" in all areas of conduct, including respecting authority, showing self-control, following school rules, working and playing well with others, respecting rights, displaying a positive attitude, being courteous and considerate and accepting responsibility. (R. at 122.) E.D.'s first grade teacher, Miss Fuller, during the 2003-2004 school year, described E.D. as "a sweet boy who always follows the rules." (R. at 336.) Miss Fuller did not promote E.D. to the second grade, indicating that he was just to the point where he needed to be to start first grade. (R. at 336.) Miss Fuller indicated that she loved having E.D. in her class. (R. at 336.) A school activity report completed by E.D.'s then-current teacher, Betty Rose, dated September 7, 2004, indicated that E.D. was performing appropriately for his age. (R. at 330-31.) Miss Rose reported that E.D. was well-behaved and, when corrected, he responded appropriately. (R. at 330.) She reported that E.D. got along well with his classmates and was able to communicate ideas and needs appropriately. (R. at 330-31.)

On April 16, 2003, E.D. had an initial psychiatric evaluation at Scott County Mental Health Center with psychiatrist Dr. Safia Sabri, M.D. (R. at 159-61.) Perry

---

[4]These notes also show that E.D. missed numerous appointments. (R. at 165-76, 179-80, 260, 263-68, 273-74, 278, 282, 286, 289, 297, 300-01, 309, 311, 313.)

Case 2:05-cv-00021-JPJ-PMS   Document 17   Filed 02/08/06   Page 5 of 12   Pageid#: 51

reported complaints of impulsivity, hyperactivity, oppositional and defiant behaviors. (R. at 159.) E.D. had been formerly diagnosed with attention deficit hyperactivity disorder, ("ADHD"), and was prescribed Adderall. (R. at 159.) Despite the medication, Perry alleged that E.D. continued to have variable sleep, appetite, concentration and energy, as well as ADHD symptoms. (R. at 159.) Dr. Sabri diagnosed rule out ADHD, oppositional and defiant disorder and borderline intellectual functioning.[5] (R. at 160.) On May 21, 2003, Perry reported that E.D. had been without his medication for the "last few months" and that he had been acting out.[6] (R. at 158.) Dr. Sabri diagnosed ADHD and prescribed Strattera. (R. at 158.) On August 6, 2003, Perry reported that E.D. had ran out of medication and she did not believe that E.D. needed medication during the summer. (R. at 157.) She reported that E.D. tolerated and responded to the medication well. (R. at 157.) Perry also reported that E.D.'s teachers reported a marked difference in E.D.'s behavior since taking the medication. (R. at 157.) Dr. Sabri again diagnosed ADHD. (R. at 157.)

After moving to Tennessee, in October 2003, E.D. started treatment at Holston Child and Youth Services, ("Holston"), with Dr. Paul C. Villeneuve, M.D., and nurse practitioner Janet Anderson. (R. at 153-56, 327-28.) Treatment notes indicate that E.D. tolerated his new medication well and was doing fine. (R. at 153-56, 327-28.) In October 2003, Perry reported that E.D. had done extremely well in school. (R. at 156.) Perry reported that E.D. was getting along with others, eating and sleeping well and

---

[5] It is noted that Dr. Sabri's April 16, 2003, initial examination is the only time or place in the record that Dr. Sabri or any other physician diagnosed E.D. with oppositional and defiant disorder. (R. at 160.)

[6] It is noted that Perry failed to report to Dr. Sabri in April 2003 that E.D. had been without his medication for months. (R. at 158, 159-61.)

-6-

taking his medication as prescribed. (R. at 153-56, 327-28.) The treatment notes fail to describe any issues regarding oppositional and defiant disorder. (R. at 153-56, 327-28.)

On December 19, 2003, Victor O'Bryan, Ph.D., a state agency psychologist, indicated that E.D. suffered from severe impairments, namely ADHD, borderline intellectual functioning and a learning disorder. (R. at 124-29.) He reported that these impairments did not meet or equal a listed impairment. (R. at 124.) O'Bryan reported that E.D. had a less than marked limitation in acquiring and using information, with attending and completing tasks and in caring for himself. (R. at 126-27.) He reported that E.D. had no limitation in interacting and relating with others, with moving about and manipulating objects or with his health and physical well-being. (R. at 126-27.)

On March 17, 2004, Dr. Williams, a state agency physician, reported that E.D. suffered from ADHD and a learning disorder. (R. at 130-35.) He reported that these impairments were severe, but did not meet or equal a listed impairment. (R. at 130.) Dr. Williams reported that E.D. had a less than marked limitation in acquiring and using information and with attending and completing tasks. (R. at 132.) He reported that E.D. had no limitation in interacting and relating with others, in moving about and manipulating objects, in caring for himself or with health and physical well-being. (R. at 132-33.)

### III. Analysis

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked

and severe functional limitations" and which lasts for a period of not less than 12 months. 42 U.S.C.A. § 1382c(a)(3)(C)(i) (West 2003 & Supp. 2005). The Commissioner uses a three-step process in evaluating children's SSI claims. *See* 20 C.F.R. § 416.924 (2005). This process requires the Commissioner to consider, in order, whether the child 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets or equals the requirements of a listed impairment. *See* 20 C.F.R. § 416.924 (2005). As with the process for adults, if the Commissioner finds conclusively that a child is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.924 (2005). Thus, under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 416.924(d)(1) (2005).

By decision dated November 2, 2004, the ALJ denied Perry's claim. (R. at 16-22.) The ALJ found that the medical evidence established that E.D. suffered from severe impairments, namely an attention deficit hyperactivity disorder, a learning disability in reading and borderline to low average intellect, but he found that E.D. did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) The ALJ also found that the combination of medically determinable physical or mental impairments did not result in marked and severe functional limitations. (R. at 21.) Therefore, the ALJ concluded that E.D. was not under a disability as defined by the Act and was not eligible for children's SSI benefits. (R. at 21-22.) *See* 20 C.F.R. § 416.924(d)(2) (2005); *see also* 42 U.S.C.A. § 1382c(a)(3)(C) (West 2003).

In her brief, Perry argues that the ALJ erred in failing to find that E.D.'s oppositional defiant disorder was severe. (Plaintiff's Brief at 5-7.) Perry also argues that the ALJ failed to consider the combined effects of all E.D.'s impairments. (Plaintiff's Brief at 7.)

As stated above, the court must determine if there is substantial evidence in the record to support the ALJ's decision that E.D. was not under a disability as defined in the Act. If substantial evidence exists to support this finding, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *See Laws*, 368 F.2d at 642. Also, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456.

Perry argues that the ALJ erred by failing to find that E.D.'s oppositionl defiant disorder was severe. (Plaintiff's Brief at 5-7.) Perry also contends that the ALJ failed to consider this condition at all. (Plaintiff's Brief at 6-7.) The ALJ specifically stated that "[t]here is no indication that he [E.D.] experiences significant problems with aggressive or oppositional behavior." (R. at 20.) The ALJ further found that E.D. did not experience inappropriate degrees of inattention, impulsiveness or hyperactivity and that the evidence failed to show that E.D. had problems with major conduct problems at school. (R. at 20.) Based on my review of the record, I find that

substantial evidence exists to support this finding. Although there was once a "concern" for and even a one-time diagnosis of oppositional and defiant disorder, the condition did not manifest into a recognizable medically determinable impairment that could significantly limit E.D.'s ability to function appropriately. (R. at 159, 219.) While Dr. Sabri diagnosed oppositional and defiant disorder in April 2003, follow-up notes indicate that she diagnosed ADHD in May 2003 and August 2003. (R. at 157-58, 160.) The record indicates that E.D.'s symptoms of ADHD were well-controlled with medication, . (R. at 153-57, 327-28.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Treatment notes from Holston fail to describe any issues regarding oppositional and defiant disorder. (R. at 153-56, 327-28.) E.D.'s school records indicate that E.D.'s behavior did not impede his learning or that of others. (R. at 119.) School records fail to describe any examples of E.D. exhibiting oppositional or defiant behavior and failed to list any behavioral modifications. (R. at 107-13, 116, 119-22.) Miss Fuller described E.D. as "a sweet boy who always follows the rules." (R. at 336.) Miss Rose reported that E.D. did not have a behavior problem and reported that E.D. seemed to be performing appropriately for his age. (R. at 330-31.) Based on this, I find that substantial evidence exists to support the ALJ's finding that there was no indication that E.D. experienced significant problems with aggressive or oppositional behavior. I also find that substantial evidence exists to support the ALJ's finding that E.D. was not disabled.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now

-10-

submits the following formal findings, conclusions and recommendations:

1. Substantial evidence supports the ALJ's finding that E.D. did not suffer from a severe oppositional and defiant disorder; and

2. Substantial evidence supports the ALJ's finding that E.D. was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Perry's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of

-11-

the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 8th day of February 2006.

/s/ Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE